# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | : |   |
|   | : | Case No. 2:12-CR-220 |
| Plaintiff, | : |   |
|   | : | JUDGE MARBLEY |
| v. | : |   |
|   | : |   |
| KARIN A. HAZEL, | : |   |
|   | : |   |
| Defendant. | : |   |

## ORDER AND OPINION

### I. INTRODUCTION

This matter is before the Court on Defendant Karin Hazel's Motion to Suppress Evidence ("First Motion") (Doc. 9-1) and Supplemental Motion to Suppress Evidence and Requesting a Franks Hearing ("Second Motion") (Doc. 20). The Government opposes both motions. For the following reasons, Defendant's motions are **DENIED**.

### II. BACKGROUND[1]

On June 27, 2011, law enforcement agents executed a search warrant for 6960 Pearce Lane ("6960 Pearce"), a single family residence in Canal Winchester, Ohio. The magistrate judge issued the search warrant on June 24, 2011. Attachment A to the warrant described the place to be searched, 6960 Pearce, and Attachment B described the property to be seized. Attachment B authorized agents to search for personal and business records, in paper and electronic form, as well as computer system hardware in the name of Karin Hazel and/or her company, Cap City investment Group, LLC ("CCIG"). Alleged violations included bank fraud, conspiracy to defraud the United States, interstate wire fraud, and making fraudulent and false

---

[1] These are the facts as understood by the magistrate judge at the time she issued the search warrant. Defendant's allegations that the search warrant contained misrepresentations are addressed in a following section.

statements to U.S. Department of Housing and Urban Development relating to Federal Housing Administration ("FHA") mortgage transactions.

The search warrant was supported by a thirteen-page affidavit signed by Special Agent Steven Tsourkas ("SA Tsourkas") of the U.S. Department of Housing and Urban Development-Office of Inspector General ("HUD-OIG"). The affidavit detailed the investigation that led SA Tsourkas to conclude CCIG was located at 6960 Pearce, and that evidence of the aforementioned violations would be found there.

In May and June 2011, HUD-OIG Special Agents conducted seven interviews and obtained two recorded conversations as part of their investigation into two different property schemes allegedly connected to Defendant: "Pearce Property Scheme" and "CCIG Investment Property Scheme."

In June 2011, two conversations between Defendant and her husband, Corey Hazel, ("C. Hazel") were recorded at the jail where C. Hazel was imprisoned for mortgage and fraud offenses. On June 8, 2011, Defendant informed C. Hazel of a criminal investigation into some of her property transactions. On June 12, 2011, C. Hazel, referencing a previous conversation, instructed Defendant "that she might want to take the hard drive out [of her computer] and replace it. . . [and] that he knows [Defendant] is familiar with people who fix computers, and that person should be able to replace the hard drive." (Doc. 13-1, at 13.) SA Tsourkas applied for the search warrant twelve days later, on June 24, 2011.

### A. Pearce Property Scheme Allegations

Two witnesses, Lee Ann Mahone and Jim Smith, were interviewed in June 2011 regarding the Pearce Property Scheme. Mahone met Defendant over 20 years ago and, though she occasionally helped Defendant with office duties, she was never a CCIG employee. Mahone

indicated that Defendant was the owner of CCIG and that CCIG's office was located at 6960 Pearce.  Agents also showed Mahone documents in the 6960 Pearce loan file.  She identified the following documents as fraudulent: two documents verifying Mahone's employment with CCIG, a letter written on Defendant's behalf bearing Mahone's signature, and a CCIG check and paystub issued to Hazel with Mahone's signature.

Jim Smith was a contract employee of Defendant and did work at Defendant's residence, 6960 Pearce. Smith indicated that "he did not perform even $6,000 work of work on 6960 Pearce." (Doc. 20.)  He was shown documents in 6960 Pearce loan file and identified the following as fraudulent: a mechanics lien signed by Smith, a letter written by Smith on CCIG's behalf, an invoice requesting payment for work at 6960 Pearce, and a check issued as payment of the aforementioned lien in the amount of $36,000.  Smith stated that the work he completed on 6960 Pearce was worth much less than $36,000, "not even close to the invoice amount of approximately $36,000." (Doc. 13-1, at 10.)  He identified the check purportedly paid over to him as the same one he picked up and delivered *to* Defendant, at her request, six to twelve months after his employment ended. Smith indicated that CCIG's office was located on April Lane, not at 6960 Pearce.

### B. CCIG Investment Property Scheme Allegations

Five witnesses were interviewed in May and June 2011 regarding the CCIG Property Scheme.  Paul Kokos Jr., a loan officer, worked on several loans for CCIG's investors, completing five.  He identified Defendant as the owner of CCIG and also identified a 'typical' payoff letter from a CCIG loan file.  He described the process of working with Hazel, the refinancing scenario, and the method of ownership transfer Defendant used. Defendant provided

3

Kokos with preliminary information, names of appraisers, rental income information on loan applications, and supporting documentation, by telephone, fax, and email.

Earl Deas ("Deas") purchased a parcel of property from Defendant in May 2007. He identified the fraudulent information in the loan application, adding that he had provided the correct information to Hazel. Deas believed the loan to be for purchase, but actually it was used for refinancing. He was unaware that Defendant had purchased the same property two months earlier, in March 2007, for $25,000 less than the loan amount.

Three other named witnesses, each one either an investor or borrower completed purchases with CCIG. They were told that CCIG purchased distressed properties in the Columbus, Ohio area, and that the properties could be purchased with no money paid out of pocket.

### III. LAW AND ANALYSIS

Hazel asserts three bases for excluding the evidence discovered during the search of 6960 Pearce on September 27, 2011: (1) the supporting affidavit failed to establish probable cause because it contained insufficient factual information; (2) the supporting affidavit relied upon stale information; and (3) even if the supporting affidavit did establish probable cause, the evidence discovered should be excluded because the search warrant was so fatally defective that no reasonable law enforcement officer could believe the warrant was valid.

Additionally, Hazel challenges the affidavit itself on the grounds that it contains factual misrepresentations and omissions. She argues that if the Government's warrant application had contained only the accurate information, it would have been insufficient for a magistrate to find probable cause. Hazel contends she is entitled to a hearing, under *Franks v. Delaware*, 438 U.S. 154 (1978), to test the validity of the affidavit.

4

In the Sixth Circuit, to determine whether an allegedly false statement in an affidavit was necessary for the finding of probable cause, "the law requires both redaction of false statements from the affidavit and consideration of material omitted from the affidavit in order to determine whether there was probable cause for a search warrant." *United States v. Wilson*, 501 Fed.Appx. 416, 421 (6th Cir. 2012). Put another way, this Court must first decide whether there was probable cause to issue the warrant based on the application as originally presented to the magistrate judge, and then decide whether there is still probable cause once the false statements are excised.

### A. Probable Cause

The Fourth Amendment requires that a warrant issue only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Before a magistrate judge issues a search warrant, there must be a finding of probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).  Probable cause rests on more than mere suspicion, but less than a "prima facie showing, of criminal activity." *Spinelli v. United States*, 393 U.S. 410, 419 (1969), citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964).  The issuing magistrate looks at the "totality of the circumstances. . . to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238-239.  The magistrate's ruling is

5

accorded "great deference." *Id*. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Defendant contends that the supporting affidavit in this case, issued June 24, 2011, did not provide sufficient information for a magistrate to find probable cause because it: (1) contained only "bare bones" information; (2) failed to establish a nexus; and (3) was based on stale information.

### 1. "Bare Bones" Information

Defendant argues that the supporting affidavit is based on 'bare bones" information. She lists a number of missing details she believes are significant, including: when the office moved to 6960 Pearce; whether CCIG's documents moved with the office; what constitutes the office; and whether Defendant retained possession of the relevant documents when the search warrant was issued.  While the affidavit did lack those details, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Brown*, 715 F.3d 985, 990 (6th Cir. 2013) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)).

"An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit." *U.S. v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).  Veracity, reliability, and basis of knowledge are interrelated, not independent, issues that the magistrate can use in determining the "commonsense, practical question" of probable cause.  *Gates,* 462 U.S. 213, 230 (1983).  Detailed descriptions of first-hand observations, along with a witness's choice to reveal her name, can be used as indicia of their reliability by the issuing judge. *U.S. v. Jackson* 470 F.3d 299, 307 (6th Cir. 2006) (*quoting U.S. v. McCraven*, 401 F.3d 692, 697 (6th Cir. 2005).

6

In this case, the affidavit included SA Tsourkas's qualifications, the contents of two jail recordings between Defendant and C. Hazel, and seven interviews with named witnesses. Two witnesses, Mahone and Smith, identified falsified documents in the Pearce property loan file. Kokos recounted completing multiple loan applications with the Defendant, using appraisers recommended by Hazel.  Deas identified as fraudulent the loan application for the property he purchased with Hazel.  In sum, the information in the affidavit upon which the magistrate relied amounted to significantly more than "bare bones" information.

## 2. Nexus

Defendant also argues that the affidavit was insufficient to support a finding of probable cause because it failed to establish a nexus between the evidence sought and 6960 Pearce. Specifically, Defendant contends there was insufficient information to show the evidence actually existed and, even if it did, no basis for concluding that evidence was located at 6960 Pearce.

To establish probable cause, "there must…be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Laughton*, 409 F.3d 744 (quoting *Carpenter*, 360 F.3d at 594 (6th Cir. 2005)).  The Sixth Circuit has held that a supporting affidavit need not conclusively prove a nexus; it only has to provide a factual basis for a magistrate reasonably to infer the evidence sought is at the location to be searched. *United States v. Graham,* 275 F.3d 490, 503 (6th Cir. 2001).

With regard to a nexus between the evidence sought and 6960 Pearce, this Court "does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home. Likewise, personal financial records are also usually stored at a person's home or place of business." *United*

*States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).  The original record in front of the magistrate showed: Smith and Mahone stated the CCIG office was at 6960 Pearce,[2] Hazel purchased 6960 Pearce in 2009 and allegedly fraudulent documents were in the loan file for 6960 Pearce.  Since 2009, Hazel had access to digital and paper loan records and she had access to a computer at 6960 Pearce. The affidavit also detailed SA Tsouraks's experience, and his conclusion that the office was located at 6960 Pearce, which a magistrate can rely on when assessing "the probable location of the evidence." *Abboud*, 438 F.3d at 572.  SA Tsourkas's experience was not even necessary for the magistrate judge reasonably to infer that a suspect accused of Given the facts on the record as well as common sense, the magistrate could reasonably infer the evidence sought would be at 6960 Pearce.

### 3.  Staleness

Defendant further contends that the affidavit contained only stale information which was, thus, insufficient for the magistrate to make a probable cause determination. It is axiomatic that stale information cannot be used in a probable cause determination. *United States v. Brooks*, 594 F.3d 488, (6th. Cir 2010) (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)).  For a particular crime, staleness is determined by the "inherent nature of the crime." *Id*.  The Sixth Circuit holds that there are four relevant factors in determining staleness:

> [1] the character of the crime (chance encounter in the night or regenerating conspiracy?), [2] the criminal (nomadic or entrenched?), [3] the thing to be seized (perishable and easily transferable or of enduring utility to its holder?) [4] the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette,* 583 F.3d 374, 378 (6th Cir. 2009) (citing *Abboud*, 438 F.3d at 572-73).

---

[2] To the extent the affidavit was inaccurate as to Smith's statements, that issue is addressed in the next section.

8

Here, all four factors weigh against Defendant's staleness contentions. The alleged crimes, fraud and conspiracy, are generally carried out over a long period of time. Furthermore, the affidavit establishes, through witnesses and documents, the repetition of the alleged crimes. In 2007 Defendant sold a property that, unbeknownst to the buyers, she had purchased two months prior for $25,000 less than her sale price. The buyers identified the loan application as fraudulent. The loan file for her residence purchased in 2009, 6960 Pearce, also contained fraudulent documents. Defendant exchanged with Kokos digital and electronic paperwork for multiple loans. Hazel also instructed Kokos to use particular appraisers. Considered together, this evidence indicates that the Defendant's allegedly fraudulent business practices were continuous and ongoing. "If an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003) (*quoting United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The affidavit indicated Defendant was clearly not nomadic. She had been conducting business in the Columbus-area since 2007 and purchased 6960 Pearce as her primary residence in 2009.

Furthermore the search warrant sought a type of evidence, personal and business records in paper and electronic form, which the Sixth Circuit has repeatedly held defy staleness claims. Business records are a type of evidence that could be reasonably "expected to be kept there for long periods of time." *Id.*, at 573 (quoting *United States. v. McManus*, 719 F.2d 1395, 1400-01 (6th Cir. 1983)). In *United States v. Word*, the Sixth Circuit held that it could not "conclude that the search warrant contained stale information when the events alleged in the affidavit were of a continuing nature and the documents sought were business records prepared and kept in the ordinary course of business." 806 F.2d 658, 662 (6th Cir.1986). Subsequently, in *Abboud*, the Court observed "the fact that by nature one keeps business and financial records for extended

9

periods of time. The entire point in creating such records is for preservation." 438 F.3d at 574. The panel concluded that, "[a]s a result, the warrant was not stale." *Id*.

Although it is a significant point in Defendant's favor that two years elapsed between the alleged criminal activity and the search warrant issuance, the length of time alone is not dispositive. *Sgro v. United States*, 287 U.S. 206, 210-211 (1932). The Sixth Circuit has held that three years between alleged bank fraud and the warrant application did not render the information stale because "where the items to be seized are created for the purpose of preservation, as are business records, the passage of time is less significant." *Abboud*, 438 F.3d at 572–73 (quoting *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents,* 307 F.3d 137, 148 (3d Cir. 2002)). Additionally, FHA loan records show 6960 Pearce was not simply a criminal forum of convenience, but also Hazel's primary residence, where many, if not most, people store their financial records.

Hence, despite the two-year period between the alleged criminal conduct at the issuance of the warrant, this Court finds all four factors weigh against Defendant's staleness claims. Accordingly, the supporting affidavit provided a substantial basis for the magistrate judge to make a probable cause determination. The affidavit did not provide merely "bare bones" information. It adequately demonstrated a nexus between the evidence and 6960 Pearce and was not stale. Defendant's Motion to Suppress Evidence Seized Pursuant to the Warrant is, therefore, **DENIED**.[3] Upon finding a substantial basis for probable cause, the Court now considers whether Defendant has sufficiently impugned the underlying affidavit so that she is entitled to a *Franks* hearing.

---

[3] Since the Court finds that the magistrate judge had a substantial basis to make a probable cause determination, the Court does not reach the question of *Leon's* good-faith exception to the warrant requirement.

## B. Franks Hearing

Defendant requests a *Franks* hearing and argues that the warrant's supporting affidavit contained factual misrepresentations and omitted material information that, if corrected, would have negated a probable cause finding. A defendant is entitled to a *Franks* hearing when she "makes a substantial preliminary showing that a [1] false statement [2] knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [3] . . . the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

### 1. False Statements

Hazel alleges that the affidavit contains both factual misrepresentations and omissions. "False statements" may also include material omissions for *Franks* purposes. *United States v. Castillo*, 287 F.3d 21, 25 (1st Cir. 2002). Still, "affidavits with potentially material omissions . . . are much less likely to merit a Franks hearing than are affidavits including allegedly false statements." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). Charges of material omissions will merit a Franks hearing only in "rare instances." *Id*.

Defendant, comparing recent witness affidavits with the memoranda of the original interviews ("MOI") from three years ago, alleges the following factual misrepresentations were included in the affidavit: Mahone never stated the office was at 6960 Pearce; Smith stated the office was on April Lane; Smith's repair work for Hazel was incorrectly categorized as "cosmetic;" Kokos received answers on the loan applications from both borrowers and Defendant; Deas's wife was interviewed as well and remembered the loan was for a refinance; Deas did not supply loan information to Hazel; and though Hazel did provide Kokos with the names of appraisers, Kokos checked their names against the bank's 'black list."

11

Hazel's comparison of the MOIs with the recent affidavits does show that the search warrant affidavit contained false statements, to the effect that Smith and Mahone stated the CCIG office was located at 6960 Pearce, and that Deas did supply the loan information directly to Kokos.  Hazel has additionally established the following information was omitted from the supporting affidavit: that Kokos checked Hazel's recommended appraisers against a black list, and that Nora Deas was also interviewed and appeared aware that the loan she applied for was for a refinance.

Defendant fails to establish, however, that the categorization of Smith's work as "cosmetic" and Kokos's statement that Hazel provided answers to loan application questions were false statements.  As for the repair work performed by Smith, Defendant merely describes it and concludes that in her opinion it was not cosmetic.  With regard to the answers on loan applications, the affidavit states "[t]he borrower, as well as Hazel would provide the supporting documentation required by the lender." (Doc. 13-1., at 10.).  Kokos's recollection two years later that he obtained "loan verification information from prospective borrowers to be submitted to the lenders" does not show that the statement in the supporting affidavit is false, nor even contradict it.  Kokos may well have received answers from both borrowers and Defendant.

**2. Knowingly and Intentionally, or with Reckless Disregard for the Truth**

In addition to showing that the affidavit included false information, Hazel "must make a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the affiant with reckless indifference to the truth." *United States v. Giacalone*, 853 F.2d 470, 476 (6th Cir. 1988)).  Although Defendant has not shown SA Tsourkas's stated the false information with

reckless indifference to the truth, Hazel has shown the misrepresentations originated with the government, not with either Smith or Mahone. *Franks v. Delaware*, 438 U.S. at 155-156.

### 3. Materiality

In determining whether these misrepresentations and omissions were material to the magistrate's probable cause determination, "the law requires both redaction of false statements from the affidavit and consideration of material omitted from the affidavit in order to determine whether there was probable cause for a search warrant." *United States v. Wilson*, 501 Fed. Appx. 416, 421 (6th Cir. 2012). Defendant contends the factual record, adjusted for the misrepresentations and omissions, fails to establish a nexus between 6960 Pearce and the evidence sought, as well as a nexus between 6960 Pearce and the alleged criminal activity.

As stated above, to establish probable cause, "there must…be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Laughton*, 409 F.3d 744 (quoting *Carpenter*, 360 F.3d at 594 (6th Cir. 2005)). Additionally "[t]here must…be a nexus…between the item to be seized and the criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307 (1967). A supporting affidavit need not conclusively prove a nexus; it only has to provide a factual basis for a magistrate reasonably to infer the evidence sought is at the location to be searched. *United States v. Graham,* 275 F.3d 490, 503 (6th Cir. 2001).

With regard to a nexus between the evidence sought and 6960 Pearce, after the Court adjusts the facts recited by the supporting affidavit to reflect the misrepresentations and omissions, it still shows: the Defendant purchased 6960 Pearce in 2009; Smith stated the office was on April Lane; and SA Tsourkas concluded the evidence sought would be at 6960 Pearce. Although these adjustments weaken the nexus showing, based on the particular fraud crimes alleged and the fact that the evidence sought was financial records, the supporting affidavit

would still have provided the magistrate a sufficient factual basis to infer the evidence sought would be at 6960 Pearce.

  Hazel bought 6960 Pearce and there were fraudulent documents contained in the loan file for the property.  She exchanged loan documents with Kokos and instructed him to use certain appraisers, with Kokos subsequently checking their names against a 'black list.'  Two jail recordings between Defendant and her husband establish that Hazel possessed a computer. Neither E. Deas, nor N. Deas was aware that two months prior to their purchase, Defendant had purchased the property she subsequently sold them for $25,000 less than their loan amount. They also confirmed that the loan application contained fraudulent information.  Additionally, Defendant points to no statement that contradicts Smith's position that his work related to 6960 Pearce had a total value of much less than $36,000.  These facts suggest that Defendant executed a criminal scheme in which she falsely represented that work was performed on her own home in order to receive cash back after the sale.  They also suggest that she possessed fraudulent loan documents and that she was making false representations with regard to other properties.

  While no single fact here would have sufficed to show probable cause, together there was a basis for the magistrate's issuance of the search warrant.  The key issue is the subtle nature of the crimes and the evidence of them.  Documents which show a suspect has committed financial fraud appear innocuous on the surface and they may be stored within similarly innocuous devices, such as computers or flash drive.  These devices are highly mobile and one cannot expect SA Tsourkas to have known, from moment to moment, whether they were on Hazel's person, in her car, or in her home office.  Still, the home office was the most likely place, as SA Tsourkas knew from his experience.  The most circumstantial evidence here is, in a way, the most damning.  In what reads as an intentionally vague and secretive conversation between

14

Hazel and her husband, her husband advised her to do something about her computer's hard-drive, and even have it replaced.  If Hazel had acted swiftly on that suggestion, the evidence of her alleged crimes might have been permanently lost.  That statement essentially forced the government's hand as it could not risk the spoliation of evidence.  Certainly, recent information that a witness had seen Hazel working on loan applications on her home computer would have provided a stronger basis for the magistrate to find a nexus to 6960 Pearce and, thus, probable cause for the warrant.  The law does not require the best evidence for a magistrate to find probable cause, however, only sufficient evidence.  Based on the specific facts of this case, the nature of the alleged frauds, and the type of evidence sought, the Court finds that even with the supporting affidavit corrected to reflect factual errors, the magistrate judge had a sufficient basis to issue the search warrant.  The false statements were, thus, not material to the magistrate's determination and do not provide a basis for this Court to order a *Franks* hearing.  Defendant's request for a Franks hearing is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Defendant Karin Hazel's Motion to Suppress Evidence and request for a Franks Hearing are **DENIED**.

**IT IS SO ORDERED.**

   s/Algenon L. Marbley
**ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE**

**Dated: August 5, 2013**